**GARY NATIONAL BANK, as Trustee under Trust No. P–3253, Appellant (Plaintiff Below),**

v.

**CROWN LIFE INSURANCE COMPANY, Appellee (Defendant Below).**

No. 3–1077A266.

Court of Appeals of Indiana, Third District.

Aug. 20, 1979.

Rehearing Denied Sept. 25, 1979.

Robert F. Peters, Lucas, Clifford & Holcomb, Merrillville, for appellant.

Peter G. Koransky, Spangler, Jennings, Spangler & Dougherty, Gary, for appellee.

HOFFMAN, Judge.

Plaintiff-appellant Gary National Bank is trust beneficiary of decedent Warren H. Pike, Jr. Decedent procured a life insurance policy for $50,000 from defendant-ap-

pellee Crown Life Insurance Company (Crown) on February 14, 1974. Following Pike's death on June 21, 1974, caused by advanced pulmonary fibrosis and rheumatoid arthritis, it came to light that Pike had made material misrepresentations in the application for insurance. In particular, false responses were given regarding his past medical history of these diseases. When suit was brought by appellant to recover the face amount of the policy, Crown raised the affirmative defense of material misrepresentation.

Following a bench trial the court below adjudged that the insurance policy was void as a matter of law, that Crown was entitled to rescission and that appellant was entitled to the premiums paid by Pike which Crown had tendered into court.

On appeal appellant's sole argument is that the judgment reached below is contrary to law in that Crown did not seasonably tender the premiums paid on the policy into court and therefore is estopped from asserting the misrepresentation as an affirmative defense.

The following chronology of events is instrumental to this appeal: After Pike's death on June 21, 1974, appellant filed for death benefits under the policy on July 17, 1974. In a letter dated September 6, 1974, Crown denied the claim based upon decedent's fraud in procuring the policy and tendered a check for $395 to the beneficiary, which amount represented premiums paid. This letter indicated that the company was exercising its right to void the contract. On January 28, 1975, appellant initiated suit for the face amount of the policy. Crown answered the complaint on March 6, 1975 and raised the affirmative defense of misrepresentation. Appellant was still in possession of the premiums check at that time but returned the check, unnegotiated, on June 17, 1975. On March 4, 1976, Crown moved for summary judgment pursuant to Ind. Rules of Procedure, Trial Rule 56. Appellee filed a motion for summary judgment on May 20, 1976, which stated that Crown could not raise its affirmative defense as it had not tendered the

return premiums into open court and had not requested rescission. On May 25, 1976, Crown tendered a check for the return premiums into court and on June 15, 1976, filed an amended answer pleading the tender and rescission. Both appellant's and Crown's motions for summary judgment were denied. The parties stipulated to the evidence and on April 22, 1977 the court entered judgment in favor of Crown.

The fundamental determination which must be made is whether Crown's tender of the premiums into court was timely.

When a party asserts that he has been defrauded into entering a contract by relying on material misrepresentation, the contract is voidable and the insurer can elect to either rescind it on the basis of fraud or affirm the transaction. *See*: *Prentiss v. Mutual Ben. Health and Accident Ass'n* (1940), 109 F.2d 1. In *Prudential Insurance Co. v. Smith* (1952), 231 Ind. 403, 108 N.E.2d 61, it was stated by our Supreme Court that to rescind a life insurance contract after insured's death, based upon fraudulent procurement of the policy, an insurer must tender back any consideration paid to the beneficiary named in the policy. If the beneficiary refuses to accept the consideration, the money must be brought into court for use of the beneficiary or the fraud will be waived. In the case at bar it is clear that Crown's initial tender of the premiums to appellant was timely made on September 6, 1974, within 50 days of proof of loss. This initial tender and accompanying letter were adequate to inform the beneficiary of Crown's election to void the contract.[1]

Crown was in total compliance with the law for so long as the beneficiary retained the tender of premiums. After the unnegotiated check was returned on June 17, 1975, at which time suit by appellant had been initiated, Crown then had a duty to tender the premiums into court. Was Crown's second tender, made into court on May 25, 1976, timely?

Appellant cites several cases dealing with the timeliness of a tender of premiums

---

1. Appellant argues that it was not aware of Crown's intent to rescind until its amended answer. This contention is refuted by the September 6th letter marked as defendant's Exhibit B, stipulated evidence of record.

made prior to an avoidance of an insuring contract:

> *Prudential Insurance Co. v. Smith, supra* ;
> *Mutual Life Ins. Co. v. Finkelstein* (1915), 58 Ind.App. 27, 107 N.E. 557;
> *State Life Ins. Co. v. Pletcher* (1922), 78 Ind.App. 128, 134 N.E. 876;
> *American Cent. Life Ins. Co. v. Rosenstein* (1910), 46 Ind.App. 537, 92 N.E.2d 380.

Each of these cases is distinguishable from the facts of this case.

In *Prudential* the company never paid the premiums into court prior to trial. There it was decided that payment into court after entry of judgment was too late. Likewise, in *Pletcher* there was no tender into court. In *Finkelstein* the insurer made no effort to tender back the premiums. The tender made in *Rosenstein* was not to the proper beneficiary named in the policy. Thus, none of these cases deals with whether or not a "second tender," that of placing the sums in the custody of the court following refusal thereof by a beneficiary, was timely.

 What constitutes a reasonable time period in which to tender such premiums becomes a question of law, where as here the facts are undisputed. *See: Grand Lodge, etc. Trainmen v. Clark* (1920), 189 Ind. 373, 127 N.E. 280. Upon appeal a judgment will be deemed contrary to law only where evidence most favorable to appellee and resulting inferences lead to but one opposite conclusion. *Reynolds v. Meehan* (1978), Ind.App., 375 N.E.2d 1119.

 One purpose of tendering premiums into court is to facilitate at the trial on the merits, a judicial determination of which party is entitled to the sums. Because rescission is an equitable remedy, equity demands that the party obtaining such relief restore the status quo by returning any consideration paid. *See: Prudential Insurance Co. v. Smith, supra*. At the time Crown paid the premiums into court, both parties had disclaimed any rights thereto.

**2.** The argument by Crown that it retained the unnegotiated check in its file pursuant to an

While Crown could have been more diligent in making the second tender,[2] the funds were placed into court custody prior to any pretrial or trial on the merits. The evidence shows that tender was made prerequisite to asserting the defense of fraud and that Crown was unequivocal in its election to rescind the insurance policy. Further, it must be noted that appellant was less than diligent in refusing acceptance of the initial check and returning it to Crown.

In light of these circumstances it cannot be held that the trial court erred in deeming Crown's action to be timely and in allowing rescission of the contract. The judgment reached is not contrary to law.

Affirmed.

GARRARD, P. J., and STATON, J., concur.

instruction to do so from appellant's attorney is completely unpersuasive.